Good morning, and may it please the Court. My name is Michael Mungay. I'm here on behalf of the appellant, James LeBlanc. I'd like to reserve five minutes for rebuttal time. We provided thorough briefing on the issues and the positions. You did. It seems like you want the benefits of union membership and not the burden. Let me respond to that, Your Honor. Mr. LeBlanc was a director of photography. I'll answer the question directly, but it takes a little bit of explanation, if you'll allow me the time. Mr. LeBlanc was a director of photography. He was a member of the local union, and he worked on union jobs for most of his career, and was able to participate in the benefits of the retirement plan and the health plan. In 2004, a lot of the union work dried up for many reasons, including the economy, and he got advice from a union representative that he can actually form a company, which he did, PeerPoint Project, and he could work for that company and make contributions to the plans, even though his work for union jobs may go up and down. As long as he made regular contributions, he would still be eligible to participate. But in order for that to happen, it has to be legitimately an employer, and the requirements are actually shockingly minimal. Basically, one employee for one day a year, besides him, makes it a legitimate company, but there are all kinds of record-keeping requirements, and that has to be legitimate. There actually has to be a real employee besides him for that period of time. In view of the fact that it would appear just from the name that all but one of these years it was some relative of his, same last name at least, and an unusual last name, I guess I don't see the abusive discretion in asking for some kind of contemporaneous documentation, something, anything, tax returns of the supposed employee, something that shows that this actually occurred. There actually were contemporaneous records. You're right to address the first issue. The requirements were minimal. At the time that he formed PeerPoint, he was told, basically you need an employee, one other person, one or two days a year. That rule has since changed. In 2009, the plans changed that rule to require 1,500 hours a year by an employee. But back then, under the rules he was operating under, and the rules that are relevant to this matter, and have one employee for one day… The question is the records. And then we get to the records. Mr. LeBlanc did employ his brother Jason LeBlanc as an assistant cameraman. Jason LeBlanc is an assistant cameraman. That is his profession, and he actually has, in the record, contribution reports from other employers in the industry. That is his profession. There's nothing suspicious about the fact that he hired his brother. He had worked with his brother before on projects. That is his brother's profession, an assistant cameraman. And he hired him on several days, as we noted in the record. But what about contemporaneous records? Because if I employ you to wash my car, mow my lawn, or whatever arrangement we have, and you're an employee of mine, then I have to make various contributions to withholding and things like that. And have I-9 forms. You have to do all kinds of things. You have to do all sorts of things. That's what's missing. If you have two employees, you say, well, here's my withholding information and all of that, you know, for the wages I paid my employee. That's what's missing. That's what I don't see in the record. The contemporaneous record here is Mr. LeBlanc, actually, Pairpoint Project, submitted contribution reports in a timely manner after the dates of those employing Mr. Jason LeBlanc and Mr. Douglas Holgate. That's not the kind of record that really demonstrates anything. That's kind of the end point rather than the input. I'm not expressing that very well, but he would have had to have on hand to be lawfully employing this person, for example, an I-9 form, something, anything to demonstrate that it was genuine at the time. He did not. He paid these people because it's one day's work. He paid them cash. There's no- But they could have given a receipt for the cash or something. He paid them cash. There was no receipt because it was cash. There was no way to trace that that money was given over. He did it informally, and he thought he was complying with what he needed to do. Now, whether or not he complied with California laws and other things like that, that's a separate issue. Well, it is, except that we're reviewing what the plans did for abuse of discretion, and it seems to me that when the claim is that I have actually done the exact minimum required and I have no contemporaneous demonstration, that they're entitled to be asking for more to substantiate the legitimacy or validity of that claim. And under an abuse of discretion standard, I have a difficult time accepting that they should have just said, oh, sure, that's good enough. But that's not what the Benefit Appeals Committee decided. What they decided is that they would accept payroll records and nothing else. They asked for other records or other information. We provided affidavits of the employees, affidavits of the- Affidavits are also not contemporaneous. I guess I read their decision somewhat differently than your assertion in that I think they looked at what was given to them. They looked at the payments in. They looked at the affidavits, and they said, you know, we're skeptical of this. We want something contemporaneous, and in the absence of it, we don't find these sufficiently persuasive. But I don't see that as a policy. It's just examining the facts in this case. If you look at the two letters of decision, there's a first level decision by the Audit Committee and a second level decision, the Appeals Committee's decision. If you read those decisions, you will see that they say, in the absence of payroll records, then we cannot establish that there were employees. And if you look at the trust agreement that talks about the kinds of information that they need, there's nothing that requires payroll records. There's nothing that says, we need payroll records. I read that as they want contemporaneous records. In other words, they don't want an affidavit from somebody saying, yeah, four years ago I did this, and yeah, I got paid, and that's it. No withholding was done from the wages that I was paid. There's nothing. I mean, an employee-employee relationship would just generate records. You know, none of that's here. Instead, all you've got is, hey, take my word for it. Yeah, I was an employee. My brother – maybe I should say my brother was an employee four years ago. I think that's what their fault is. I mean, the fault that they're attacking or the basis for their decision. Where are the records that – I mean, any one of the lawyers in the audience here has employees, and we all know we have to have – what was it, 941? I mean, all the tax forms you have to file, all this stuff for legitimate employees. Now, if you pay somebody, you've got somebody who washes a car, and you pay them under the table, or a casual employee, you know, that's something totally different. But that's not your client's position. These were real and true employees and not independent contractors or something else. They were employees, and where's the record of that? The only contemporaneous written record are the contribution reports that I referred to earlier. After they worked, Fairpoint submitted a contribution report to the plan saying, this person worked for me during this week, this many hours. But that alone doesn't demonstrate that they were employees. As Judge Mann has just said, they might have been just doing them a favor or independent contractors or something. It doesn't demonstrate – I mean, almost anything would have been enough to demonstrate it. An employment agreement, an I-9 form, a payroll record, and there just was nothing. There was a receipt, as Judge Wardlaw said. So, I mean, what I'm stuck on, I guess, is our standard of review, which is abuse of discretion. We're not looking at it de novo to say, well, would we have believed this documentation? So, I guess that's the hurdle for me. How did they abuse their discretion? Because they used – the policy that they used to make their determination was that in the absence of payroll records, we're not going to consider anything else. But they did consider records. But what other records would there be? I mean, logically, it would be payroll records. In other words, if you're on my payroll, you're my employee, then there are payroll records. I mean, they could have said, no, wait, we want to have some immigration form or something. No, that – you know, obviously, union membership and the contributions, all of that requires a payroll record. So, we know you've got payroll records. After the – during the audit, the audit committee said, what documents are there? Well, there's the contribution reports. What other documents do you have to substantiate the employment? And they – and during the appeal process, they asked for certain things, call sheets, whenever you have a big – That's right. Project in the industry, there's call sheets about when the – who's on the crew and who needs to be there. Things outside of payroll records. They asked for this information. Right. And you had none of that. Right. So, where is the abuse of discretion? Because, I mean, had you submitted, say, the call sheets and an I-9 form and a receipt, and then they said, no, no, that's still not good enough, you'd have a very different case. But I failed to see the prejudice, if you will, from the wording of the decision, which says, well, you don't have payroll records. You also had nothing else. So, I guess I don't see how that leads us to a decision in your client's favor. One other argument that I'd like to present is that we've talked about contemporaneous records, but nowhere in the trust agreement does it require the contemporaneous records. That's what the – But it permits an audit, and the whole point of an audit is to demonstrate the validity or invalidity of the claims that are being made. Right. And, you know, here we provided to the appeals committee and to the audit committee affidavits from the individuals who were there. That's right. The employees and the producers who hired Parapoint Project and worked with James LeBlanc and Jason LeBlanc or Douglas Holgate during those time periods. Those people were all deposed. The plans took five depositions in this case of the producers who hired Parapoint. They have no – they have nothing – no skin in this game, so to speak. And all the producers said, yes, this happened. They were there. They worked those out. Do you want to reserve some of your time? Well, wait a second. As a practical matter, so you're arguing that he should have been entitled to benefits during that period of time. But he received benefits during that period of time. Yes. And he gets to keep them under the decision. So as a practical matter, even if the board abuses discretion, how is your client hurt by that? Because my understanding is that the plans still feel that that money is owed, that the decision of the district court – They're not going to be entitled to recover it. Well, under the theories that they presented to the district court, the decision was that they're not entitled to get those. I don't know if that's the end of the – that should be the end of the story. Well, it's an ERISA plan. Yes. And the district court has spoken, and that's going to have preclusive effect. Right. Preclusion. And perhaps the plans can address that issue as to their feelings of whether that's the end of the story or not. I don't know, as I stand here today. I know that that's what the decision of the district court is on those theories that were brought, but I don't know if the plans view that money as outstanding and if there's some other theory of recovery out there. I don't know. I would love to hear what the plans say. What's the status today? Is he still – is he participating in the union today or not? No, he's retired. He's retired today. Yes. Okay. Thank you. You have about a minute for rebuttal. Thank you. I appreciate that. May it please the Court, Katherine Halpert appearing on behalf of the Motion Picture Industry Health Plan. Your Honors, there's no abuse of discretion by the BAC. The BAC did not abuse discretion in denying LeBlanc's appeal in determining that PurePoint was, in fact, a loan-out company. During the two-and-a-half years of exchange of documents with the plan, PurePoint and Mr. LeBlanc were unable to provide any documentation establishing an employer-employee relationship. The plans kept asking for the documents, and the only thing he could – he didn't even provide the affidavits during that particular process. What Mr. LeBlanc is essentially claiming is that – not simply that the BAC is required to review all the documents that he prevented in the affidavits, but they have to accept them as true, and that's simply not the standard. The health plan agreement in Article 5, Section 6, which is part of the record, grants to the directors the authority to cause the audit of inspection of records, which may be pertinent in connection with contributions or reports, in order to accomplish the purposes of the plan. The Supreme Court has determined that the maintenance of employer records, which can be audited, is necessary to accomplish purposes of the plan, to assure that all funds that are due to the plan are received, and that all participants and benefits are paid only to participants who are entitled to the benefits. Article 6D of the trust agreement specifically confers upon the directors the discretion to determine that no contributions are due in the absence of adequate records. This is not a rupper stamp situation. At the audit level, the plans attempted to determine whether there was in fact documentation to support the report of contributions, which appeared to be very fraudulent. And then when it got to the BAC, there wasn't a second level of appeal. That issue was before the Audit Collections Committee. The Audit Collections Committee made their determination, and Mr. LeBlanc, as a participant, was notified that he had a right to appeal the removal of his hours. After that, he did appeal. He appealed the removal to a different committee with different directors who took a fresh look at it as required by the statute. In fact, the record shows specifically that they were not satisfied with the documentation in his initial appeal letter to the BAC. They requested additional documentation and continued the hearing to allow him sufficient time to produce it. He produced documentation, but he was unable to produce any contemporaneous records. Instead, he has an affidavit of his brother and one of a longtime friend. And the affidavits are very formulaic. They don't really go to the actual issues, who the statutory employer is. They simply indicate that, yeah, I showed up on a job and I was paid $200. And that's what was before the committee. I don't think that the factual determination of the BAC leaves this court or any court with the firm definite conviction that a mistake was committed. The district court properly applied the abuse of discretion standard and upheld the decision of the BAC, finding that the decision was logical, plausible, and supported by the record. What is your position with respect to the issue that Judge Wardlaw raised with opposing counsel? That is, the district court has expressly not required or allowed disgorgement of past benefits. Is it your contention that that is still an open issue in the courts, or is that a done deal? Your Honor, if Mr. LeBlanc were still an active participant, I believe that the plan provides a self-help remedy, and we would be, based upon this ruling, be able to enforce the terms of the plan and recoup from future benefit payments without access to the courts. In this case, however, he is a retired participant, and we do not have the availability because it is a different plan that he is currently receiving retiree benefits from the plan to access that. If I understand you correctly, you are, in fact, conceding that no monies will be sought from him. So he is receiving retirement benefits, which is a separate plan from the health plan that we are litigating about now. That is correct, but it is still part of the overall motion picture industry in pension health plans, and the benefits are received from the same trust. Right, but is there anything in the plan that would allow you to recoup the health benefits from the retirement plan? No, no. They are two separate established plans, and the legal counsel has made the decision that one, as a freestanding plan, we cannot recoup from the other. Let me ask you another question then. I'm sorry, Your Honor, I'm somewhat at heart of hearing this. And I'm somewhat short of breath. My other question is, why then didn't he get some success on the merits? I mean, why is this a procedural victory, as the district court said? Well, I think, first of all, the plaintiff, or excuse me, the appellant has asked the court to review the decision of the district court de novo, the decision denying his motion for attorney's fees. In the first instance, I believe the proper standard of review is an abuse of discretion. It was a discretion or determination by the district court that LeBlanc had not achieved success on the merits. I know what the district court did. I'm just saying, in light of the fact that he doesn't have to repay the benefits, why didn't he gain some success on the merits? I don't understand why the district court thought it was procedural. And if that's an error as a matter of law, that's an abuse of discretion. I think in this case, Your Honor, is that the court denied the motion on two grounds. The first ground is the fact that, number one, they determined that they had not had any success on the merits. The second ground is also that the motion would require, in somewhat an analysis under Hummel, a relitigation of the issue. And the underlying issue in both cases, the underlying substantive issue in both cases, was whether LeBlanc was entitled to, or excuse me, whether LeBlanc had wrongfully obtained benefits from the plan. The plans were absolutely successful on his claim, affirmative claim, for benefits. He did not have a right to benefits. He has no resolution. There's nothing in the record that shows that he had any success on the merits of his claims, his affirmative claims. The court, understanding that, it's interesting because both parties, in fact, on the counterclaim, took the position that if, in fact, we could establish fraud, that the cause of action was still available, the remedy was still available. Basically, as I read the district court's decision on fees, it was essentially a plague on both your houses. It was, you know, there was some type of success on the counterclaim in the dodge-the-bullet theory, and the defendants achieved entire success on the main claims. And basically, the court said, I'm not giving fees to anybody. Well, I think that the court, in analyzing it, understood that, at least in this circuit, there were no cases that actually showed that a party who had absolutely been defeated on all of their underlying claims of ERISA achieved any success on the merits, and I think that with regard to this dismissal of the counterclaim, the court determined that it was, in fact, just procedural because of the lack of remedy. It may have preclusive effect in terms of a decision, but it isn't a decision or a statement as to the underlying viability of the claim itself, that benefits have been wrongfully obtained. And because the court had already made that decision in the initial case, that they were faced with this situation in terms of the analysis and the attorney's fees of actually having to apply a de novo standard to determine whether fees were appropriate on the counterclaim or the dismissal of the counterclaim, and I think it would just be a backdoor way for the plaintiff to have a different standard with regard to their claims. It's basically requesting the court to do a de novo review of their right to benefits, basically. You know, there is really no cases. The closest, I think, is Simonia, and I think in that case it was a similar situation where the court, it was actually decided after Hart, but I think the district court opinion was before Hart, and the court said, you know, that they've met, we'll assume they've met the threshold. Even assuming here that they've met the threshold, it's clear from the district court opinion that they would not be entitled to fees because even though the dismissal of the counterclaim, which the judge can basically characterize as procedural, if you're analyzing fees and the right to fees under that counterclaim, there was no, the substantive review of the basis for the claim shows that there was no, that he would not have been the prevailing party. The court had already determined that fees basically were wrongfully obtained and based on the abuse of discretion standard. Fees were wrongfully obtained? Not fees, excuse me, benefits. Benefits, okay. Sorry. I was with you until that last sentence. Okay. May I go on? You may. Okay. You have three and a half minutes. So I understand in the appeal that they request for an alteration of the standard of review, but I submit that there is no basis for alteration either because I think the record amply shows that Mr. LeBlanc received a full fair hearing, that he was allowed to develop the record and that the courts actually considered, excuse me, the board of directors actually considered everything in the record. In fact, if you look at the denial letter and the denial letter from the BAC specifically says, we've reviewed all of the documents and based upon our consideration, we deny your appeal. In fact, the specific language says that the BAC LeBlanc received. We have it in front of us. You don't have to give up all your time if you don't. Going back to attorney's fees though, Your Honor, if I may, I understand he has cited second circuit authority in which the courts did find that there was, that the dismissal of a counterclaim involved was more than just procedural. I submit that that, in fact, is a very different case than the one here. In this case, we already have a finding that, in fact, that the plaintiff has not had any affirmative, although he claims he may have met his litigation objectives, he did not. He did not get a ruling that he was entitled to benefits. He did not even obtain a declaration absolving him from the obligation to reimburse the health benefits for the wrongfully paid benefits. He simply maintains what was important, that he got what he wanted, which is not to have to pay them back. I submit that the underlying analysis of the substance of the claims show that he did not prevail. More importantly, with regard to the second ground, I think the district court properly acknowledged that even if he was able to meet the threshold, showing some degree of success, thereby triggering the analysis of Hummel, I think that under the circumstances, the court would determine that no, and properly exercise that no fees were appropriately awarded. And I think that was the intent of the order. And that the district court's decision was purely procedural because it had no impact under the underlying substance merits or the plans assertions that the plans were entitled to repayment of benefits, overpayments of benefits. I think if you go back to what the underlying definition of what merits is, it's the difference between adjudication of the merits for purposes of preclusion or res judicata versus merits, which basically is the substance of the claim rather than the remedy. And I think that under the substance of the claim analysis, that in fact Mr. LeBlanc lost and that the court properly exercised its discretion in denying fees. Thank you, counsel. Thank you, just very quickly. First, we spent a lot of time addressing whether the appeals committee abuses discretion. And there's also, we have a second argument that the appeals committee actually did not give a full and fair review of the information that was provided to it. And I just wanted to raise that because we were discussing abuse of discretion. We're aware of that argument, certainly. And then finally, on the attorney's fees, a good point is raised here. When Mr. LeBlanc, the final appeal ruling came out, he had this large bill. So rather than sit back and wait for the plans to go after him and file suit for that, he aggressively filed suit for declaratory relief. And he shouldn't be punished because he lost on those claims. His main purpose was to get out from under this huge bill. And it seems like what the plan said is that's what happened. That's what he achieved here. And he did that because the counterclaims were dismissed. It was not purely procedural. In fact, Rule 41 of the ACP says that a dismissal of a counterclaim is a ruling on the merits, is a decision on the merits. Thank you, Counselor. You have exceeded your time. We appreciate the arguments from both counsel. They've been very helpful. And the case just argued is submitted.
judges: Mahan, Graber, Wardlaw